Chancellor íIakpek
delivered the opinion of the court.
It does not appear to me, that the cases referred to by the chancellor, would authorize the resorting to extrinsic circumstances, for the purpose of giving construction to a will in such a case as the present. The general rule is certainly, as laid down by Lord Mansfield, in Doe vs. Fyldes, Cowp. 840, “ that a will shall be construed by what appears op the face of it, and not upon circum *171 stances of matter extrinsic.” See also what is said by the master of the rolls, in Bootle vs. Blundell, 1 Merv. 216. This is in conformity to the rule, applicable to all instruments, that when there is a patent ambiguity on the face of the instrument, extrinsic testimony shall not be received to explain it. The case of Fonereau vs. Poyntz, 1 Br. C. C. 472, is one in which it has been sometimes supposed, that a different rule was adopted. That was a case, in which the testatrix gave various legacies of stock in long annuities. There was an ambiguity, whether the various sums mentioned, of £500, of £201), and £100, were intended to be the capital of the legacies, or whether annuities of those amounts were intended. If the latter construction prevailed, the legacies would more than exhaust the estate, and disappoint residuary legatees. Lord Thur-low admitted evidence of the amount of stock in long annuities possessed by the testatrix, for the purpose of aiding in the construction. He says, that he rejects all the declarations of the testa, irix, and all statement of her property, but “ that every evidence as to the description of the subject, .the testatrix has described, must be admitted. As in the case of a specific legacy, you must hear evidence concerning the subject to which the will applies, in order to see whether the description applies aptly, or not.” In Druce vs. Dennison, 6 Ves. 401, Lord Eldon censures what Lord Thurlow is made to say, in Jeacock vs. Falconer, 1 Br. C. C. 296, that “ evidence cannot be received to prove what the testator meant, by the words used in his will; but it may as to facts upon which he made his willwhich be says, is not intelligible ; and as to the case of Fonereau vs. Poyntz, says, he understands Lord Thurlow to have admitted the evidence, on this ground, — “ that the testatrix having given as a species of stock, that which was of no known denomination of stock, the will shewed she meant to give something ; but did not ascertain the subject she meant to give. Therefore, Lord Thurlow looked at the property, in order to prove what she meant; the will proving that she meant to give something, but the description of the subject not being intelligible. That was not contradicting any description of the will.” Lord Eldon acted on a similar principle, in the case before him ,• but that can have no application to a case like the present. The evidence of the extrinsic circumstances being rejected, we concur with the chancellor, that the codicil can have no effect in enlarging the power given by the will.
Then we are .to inquire what interest she takes under the will; The will gives in trust for her separate use, during her life, and if *172 she shall have issue at her death, in trust for such uses, interests, and purposes, as she by will duly executed shall appoint ; but if she shall have no issue, then to the testatrix’s surviving children, or the issue of such as may have previously died. In Standen vs. Standen, 2 Ves. jr. 589, Lord Roslynn seems to intimate, that-where the estate was given to the legatee for life, with an unquali» power of disposition at her death, her estate was absolute. If this were so, the complainant would have taken the absolute estate, sub-ectonly to be divested on the event of death without leaving issue, Rut there were other grounds, on which Lord Iloslynu, rested his decree; and on these only, Sir Wm. Grant, commenting on the case in Bradley vs. Wescott, 13 Ves. 452, thought it could be supported. I am satisfied upon an examination of the cases, that the yule is as laid down in the last mentioned case. “ The distinction is, perhaps, slight, which exists between a gift for life, with a power of disposition superadded, and a gift to a person indefinitely, with superadded power to dispose by deed or will. But that distinction is perfectly established, that in the latter case the property vests. A gift to A| and to such person as he shall appoint, is abso? lute property in A without an appointment; but if it is to him for life, and after his death to such persons as he shall appoint by will, be must make an appointment to entitle that person to any thing.” That is, it will not pass by the legatee’s own will, under the general description of his property or estate, without reference to the power. Such was the case of Reid vs. Shugold, 10 Ves. 370. The casa pf Hale vs. Margirum, 7 Ves. was one of a gift indefinitely, with a superadded power of disposition. In Buford vs. Street, 16 Ves. 133, in addition to the power of disposing by will, the legatee had also power to dispose in her life time, from time to time, by deed or writing ; and on this eircnnistan.ee, the case was distinguished front! Reid vs. Shugold, and the legatee held to talje an absolute estate. And the limitation in default of appointment, to the use of the right heirs and distributees of my said daughters, or daughter, so dying as is last aforesaid, freed and discharged from all other and further trusts,” does not come within the rule in Sh dly’s case, the gift to the tenant for life beiqgqf an equitable estate, and that to the heirs of the legal estate.
Then with a view to the question, of the competency of the defendants, to release to the complainaut, so as to give her the power pf disposing of her portion of the estate, it is necessary to inquir® what interest they have in that portion. Complainant takes an petate for life, with a contingent remainder to her brothers and sis; *173 ters, in the event of her death without issue. It is contingent also in another respect. If any of them should then be dead, having left issue, then it is to the issue, who are Substituted for them, and take as purchasers under the will. In the latter event, it is plain, their release could operate nothing ; the issue not taking through or under them. If they should he alive, however, their release would bind them to the extent of the interest they take. But that would be, according to the construction already given, only a life estate ; t,he remainder limited to them, being “ subject to the same limitations and conditions, as are expressed of and concerning the original shares.” This, then,.would be the effect of the release claimed, to give to complainant the life estate ml those of her sis. ters, who shall be living at the time of her death, with the same contingencies as before. It is true, that those who should after-wards die leaving issue might appoint by will, in conformity to her disposition ; but this has nothing to do with the release. Defend, ants say, they agreed with complainant, “ to execute such deeds, and do such acts, as should be necessary to give complainant power to dispose of her share of their mother’s estate, if she should not have any issue ; but the agreement was to do so, provided they, these defendants, have such’ estates as to enable them to .do so.” According'to the view, I have taken, they have not such ¡estates as enable them to give her any certain power of disposition ; but only to the extent, and subject to the contingencies mentioned. If they are disposed to release, to the extent’of their power, complainant needs no aid of this court. She may have a right to come into this court, to have her rights in the property declared, and this has been done ; but for every other purpose, the bill must be dismissed. And it is ordered and decreed accordingly.
itlAZVCK, for motion.
Finley, contra.
Filed 2d March, 1837.
WILLIAM HARPER.
We concur,

3.' JOHNSTON,

JDAVID JOHNSON.